IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-01673-RPM

GRACE CHURCH OF ROARING FORK VALLEY, a Colorado Non-Profit Corporation,
TERRY MANER, and
E. WAYNE STARR, as members of the Church and participants herein,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, STATE OF COLORADO;
DOROTHEA FARRIS;
JACK HATFIELD;
PATTI KAY-CLAPPER;
MICK IRELAND;
MICHAEL OWSLEY, Individually and in their official capacity; and
PLANNING AND ZONING COMMISSION OF THE TOWN OF BASALT, BASALT, STATE OF COLORADO,

    Defendants.

---

ORDER GRANTING SUMMARY JUDGMENT DISMISSING ALL CLAIMS

---

On January 9, 2008, at a public hearing the Board of Commissioners of Pitkin County, Colorado ("BOCC") adopted Resolution #005-208, a copy of which is attached as Exhibit A. That resolution reversed the BOCC's previous denial of the application of Grace Church of the Roaring Fork Valley, Inc. ("Church") for a special review use of its property at the intersection of Emma Road and Sopris Creek Road in unincorporated Pitkin County which gave rise to the filing of this civil action on August 29, 2005. In an amended complaint, filed on February 23, 2006, the Church and the individual plaintiffs claimed that the denial was in violation of the

-1-

prohibitions of implementing land use regulation in a manner that imposes a substantial burden on religious exercise, applying it a manner treating the Church on less than equal terms with nonreligious assembly, discriminating against it on the basis of religion, and imposing unreasonable limitations, contained in the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq.

After denial of motions to dismiss and completion of discovery related to the claims for injunctive and declaratory relief, the Court separated those equitable claims from the plaintiffs' damages claims and scheduled a trial to begin on January 14, 2008. The trial was vacated by agreement. As contemplated in the Resolution, the plaintiffs and the County defendants entered into a written settlement agreement on June 3, 2008, resolving the claims for declaratory and injunctive relief under RLUIPA and claims of constitutional violations brought under 42 U.S.C. § 1983. In that agreement, the Church agreed to donate 1.05 acres to the County for public parking and a fuel facility and grant a restrictive covenant to improvements described in the approved resolution and the County agreed to pay $350,000 for that covenant and $295,000 for attorney fees and costs incurred in prosecuting these non-monetary claims. After closing the agreement those parties filed a stipulated motion for voluntary partial dismissal of the plaintiffs' RLUIPA and § 1983 claims for injunctive and declaratory relief. An order entered on that stipulation on October 30, 2008.

The County defendants moved for summary judgment of dismissal of the RLUIPA claims by relying on the provisions of 42 U.S.C. § 2000cc-3(e) granting governments the opportunity to avoid judicial enforcement of the statute by taking action to eliminate the violation. That section reads as follows:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

Although the language appears to be limited to a policy or practice that results in a substantial burden on religious exercise, it has been read to include the other prohibitions of RLUIPA. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir.2003), *cert. denied,* 541 U.S. 1096 (2004).

The Plaintiffs have made facial challenges to the Pitkin County Land Use Code ("Code") because it requires churches to meet all of the criteria for special use review, including compliance with the Master Plan. That, plaintiffs say, eliminates building new churches as a practicable matter. The plaintiffs have failed to provide support for a facial challenge to the Code.

The focus of this case is the action of the BOCC in the enforcement of the Code by denying the special use application, as amended, in the May 2005 resolution. To the extent that denial violated any of the provisions of RLUIPA, Resolution 005-2008 and the Settlement Agreement and Release of June 3, 2008 eliminated those obstructions to the plaintiffs' religious exercise by permitting construction of the Church facilities and their use under conditions that were acceptable to the plaintiffs.

There is no controlling precedent to guide application of the governmental discretion exemption in § 2000cc-3(e) where, as here, the corrective action was taken years after filing this action and on the eve of trial.

The plaintiffs argue that the BOCC's concession should not preclude them from recovering consequential damages caused by the delay in their opportunity to make religious use of property purchased in September, 2003. The counter to that argument is the recognition that the BOCC did more than grant the special use application. The Church has received a reasonable amount for reimbursement of its costs and attorney fees for preparing its case for injunctive relief and a substantial sum for granting restrictions on future use and development under the terms of the Settlement and Release. While the parties expressly excluded the plaintiffs' damages claims from the release, the result of the BOCC's actions is a fair resolution of the adverse effects of the earlier denial decision.

The conclusion that the County defendants have avoided further liability for damages under RLUIPA by their actions expressly taken under § 2000cc-3(e) as recited in paragraph 2 of the Resolution may be challenged on appeal. Accordingly, the merits of the plaintiffs' damages claims under RLUIPA should be evaluated to give finality to this litigation.

It is not at all clear that a jury verdict awarding compensatory damages of the type claimed in this case is appropriate relief within the contemplation of Congress in providing for a private action in § 2000cc-2. The cited cases are in conflict. The better view is that Congress did not intend to expose local governments to such liability. Again, because that issue is debatable, the assumption is that such recovery is authorized and the viability of the claims are considered under the standard of Rule 56.

The plaintiffs' RLUIPA claims (claims 2-5) are asserted against the Planning and Zoning Commission of the Town of Basalt ("Basalt") and against Pitkin County and the Pitkin County BOCC, individually and in their official capacities (collectively, "the County defendants").

The plaintiffs claim that because Basalt conducted formal hearings, took an official vote and submitted a formal recommendation for the denial of the Church's special use application, as revised, on December 14, 2004, it has governmental liability under RLUIPA. Pitkin County had referred the Church's application to the Town of Basalt pursuant to the terms of an Intergovernmental Agreement Regarding Referral of Land Use Development Applications and Joint Planing Activities, dated December 5, 2002 ("IGA"). Basalt's recommendation was specifically cited as one of the reasons for denial by the BOCC on May 11, 2005. An earlier motion for summary judgment by the Basalt Planning and Zoning Commission was denied on May 11, 2006, on the conclusion that whether the County was free to make an independent evaluation, assessment and decision on the Church's application was a mixed question of fact and law which could not be resolved under Rule 56 at that time.

Basalt renewed the motion after the County's action in adopting Resolution No. 005-2008. That was done without any participation by Basalt. The County's independent action constitutes a definitive interpretation of the IGA which supports Basalt's contention that it has no governmental responsibility for the County's earlier decision and warrants dismissal of the plaintiffs' claims against Basalt.

The following land use regulations are relevant to the plaintiffs' RLUIPA and constitutional claims against the County defendants:

The Property is in an area designated as AFR-10 in the 2003 Pitkin County Land Use Code. An AFR-10 District is zoned for agricultural, forestry and residential uses, with a minimum lot area of 10 acres. The Code states that the purpose of the AFR-10 designation is "to maintain the rural character of lands proximate to development centers and State highways by

preserving agricultural operations, wildlife habitat and scenic quality while permitting low density, single family dwelling units and customary accessory uses." (Code, at § 3-40-090.) Church use of property located in an AFR-10 District requires the County's approval through the special review process.

The Code's General Standards and Criteria provide that evaluation of a proposed special review use requires consideration of the applicable county master plan. The Down Valley Comprehensive Plan ("DVCP"), adopted by the BOCC in 1987, is the applicable master plan. The DVCP states that its objective is "to identify the highest priority land for preservation and suggest preservation strategies while recommending the most suitable locations for development." (DVCP at 12.) The DVCP encourages urban-type uses to locate closer to the Basalt, Aspen and Snowmass urban growth corridors.

The Property is located in an area of Pitkin County known as the Emma neighborhood and is designated as Rural Residential in the DVCP. The DVCP states that Rural Residential is "[a] designation applied to private land due to its rural character, visual quality, environmental sensitivity and remoteness to public services." (DVCP at 103.) The DVCP specifies that the Emma area is characterized by unique and attractive visual resources. (*Id.* at 16 & 26.) Preservation of these scenic resources is identified as an issue and concern. The DVCP states, "[t]he maintenance of visually pleasing scenic views must be a concern in planning the future of the Down Valley Area. Intrusion of urban-type improvements, poorly-situated developments, or the adoption of other policies that would discourage proper land management practices would severely degrade these resources and should be avoided." (*Id.* at 26.)

The County's 2005 denial of the Church's special review use application was based on the finding that the "Special Review Request does not adequately meet Special Review criteria in this location due to the size and operating characteristics of the proposal being out of harmony with the surrounding area, the Town of Basalt's recommendation of denial and the proposed use's inconsistency with the Down Valley Comprehensive Plan." (Resolution No. 076-2005.)

The plaintiffs' second claim for relief alleges that the County defendants violated RLUIPA's "substantial burdens" provision, 42 U.S.C. § 2000cc(a)(1). Although the County's motion directed to this claim was explicitly made on the basis of RLUIPA's safe harbor provision, the merits were fully explored at oral argument. The plaintiffs' evidence in support of this claim is in the record.

> Section 2000cc(a)(1) provides:
>
> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

Section 2000cc(a)(2), provides that this subsection applies in any case in which –

> (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;
>
> (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

> (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

The plaintiffs rely on section 2000cc(a)(2)(C) as the basis for applying section 2000cc(a)(1) in this case. *See* Am. Compl. ¶ 86.

"[T]to prevail on a claim under the substantial burden provision, a plaintiff must first demonstrate that the regulation at issue actually imposes a substantial burden on religious exercise." *Civil Liberties For Urban Believers v. City of Chicago*, 342 F.3d 752, 769 (7th Cir. 2003) ("*C.L.U.B.*")). The standards under RLUIPA are different from those under the Free Exercise Clause. Under RLUIPA, the definition of "religious exercise" is not limited to religious activities that are "fundamental" or central to a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A)); *see Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 663 (10th Cir. 2006) (recognizing that the district court erred in requiring the burdened religious activities to be "fundamental"). RLUIPA provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. 2200cc-5(7)(B).

The Tenth Circuit has not defined "substantial burden" in the context of 2000cc(a)(1), but has provided the following guidance:

> RLUIPA's legislative history reveals that "substantial burden" is to be interpreted by reference to the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq. , and First Amendment jurisprudence. See 146 Cong. Rec. 7774-01, 7776 ("The term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise.")

*Grace United Methodist Church*, 451 F.3d at 661 (also citing *C.L.U.B.*, 342 F.3d at 760-61).

The plaintiffs' evidence does not establish a substantial burden. The land use decision did not prevent the plaintiffs from assembling or engaging in their religious practices within the County. As discussed below, the plaintiffs were not treated in a discriminatory manner. The plaintiffs were not pressured to abandon their beliefs or forego religious conduct. The only effect on religious exercise resulting from the denial of the special use application was that the Church could not use this particular property for its religious purposes.

The plaintiffs' third claim allege that the County defendants violated RLUIPA's "equal terms" provision, 42 U.S.C. § 2000cc(b)(1). That section provides:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

"A plaintiff bringing an as-applied Equal Terms challenge must present evidence that a similarly situated nonreligious comparator received differential treatment under the challenged regulation." *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1311 (11th Cir. 2006); *Rocky Mountain Christian Church*, 2010 WL 2802757 at * 3. ("To prove this claim the district court properly instructed the jury that [the plaintiff] must establish 'that [the defendant] treated [the plaintiff] less favorably in processing, determining, and deciding the 2004 special use application of the [plaintiff] than [the defendant] treated a similarly situated nonreligious assembly or institution.") "If a plaintiff offers no similarly situated

comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof [under 42 U.S.C. § 2000cc-2(b)]." *Primera Iglesia Bautista Hispana*, 450 F.3d at 1311.

The plaintiffs assert that Basalt High School, the Emma Schoolhouse, the Roaring Fork Club, the clubhouse at Sopris Mountain Ranch, the Maroon Creek Club and Elk Mountain Lodge are similarly situated comparators. They are not.

Basalt High School is a public high school located in an AFR-10 District. Reasonable jurors could not find that Basalt High School is similarly situated because its location was determined by the School District pursuant to C.R.S. § 22-32-124(1), which confers exclusive authority on a Board of Education to decide where schools within the District are located. There is no evidence that the Pitkin County BOCC played any role in determining or approving the location of Basalt High School.

The Emma Schoolhouse, owned by the Emma Community Trust, is a small one room historic school building located in the Emma area across the road from the Church parcel. The Schoolhouse has been used a meeting room and community gathering place. It is beyond dispute that any assembly use that was or could be made of a one-room building is not comparable to the Church's proposed use of the subject Property.

The Roaring Fork Club is a golf club located on property annexed by the Town of Basalt in 1996 and approved by the Town for development as a golf course. There is no evidence that Pitkin County was involved in approving the development of that parcel as a golf course.

Sopris Mountain Ranch is a residential development located in the Emma area. The development includes a clubhouse for the use of homeowners and their guests and other

amenities such as a polo field, stables and equestrian facilities. Terry Maner stated in an affidavit that he observed the clubhouse being used for a wedding. He also stated that he has seen notices in the local newspaper advertising lectures and other events at the clubhouse. That evidence is not sufficient to show that the Sopris Mountain Ranch clubhouse is a proper comparator. No evidence has been presented showing that Pitkin County was involved in regulating the uses described in Terry Maner's affidavit, or that the County was even aware of those events. Reasonable jurors could not conclude the Sopris Mountain Ranch clubhouse is comparable to the Church's proposed project.

The Maroon Creek Club is a golf course facility located in an area that was zoned as an AFR-2 District under the County's Land Use Code. Maroon Creek is not a substantially similar comparator because it is not in an AFR-10 District, is not in the Emma area, and was not subject to the Down Valley Comprehensive Plan because of its proximity to Aspen.

Elk Mountain Lodge is located in an AFR-10 district on Castle Creek between Aspen and Ashcroft in a sparsely populated mountain canyon, approximately 30 miles away from the Grace Church Property. In 1996, Pitkin County approved a special use permit for the Elk Mountain Lodge to operate as a reception hall and meeting facility, allowing a maximum of 52 events per year with a maximum of 250 persons per event. Permits issued in 2002 and 2003 allowed a maximum of 300 persons per event. The Elk Mountain Lodge is not a proper comparator because the Elk Mountain Lodge is not in the Emma area and was not subject to the DVCP. When Pitkin County approved the Elk Mountain Lodge application, there was no master plan in effect for that area.

During the period between the enactment of the DVCP and the Church's application, there had been only two applications for special review use for properties located in the Emma area. The first application requested permission to establish a residential subdivision that would also have included a farmers market and offices. The second application requested permission to convert an existing 30,500 square foot riding arena into a commercial veterinary clinic. Pitkin County denied both those applications on grounds that they failed to meet the special review criteria, just as the County denied the Church's application. The plaintiffs have no evidence of less than equal treatment.

The plaintiffs' fourth claim alleges that the Pitkin County defendants implemented the Land Use Code in a discriminatory manner, in violation of 42 U.S.C. § 2000cc(b)(2). That section provides:

> No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

The plaintiffs' evidence is insufficient to support this claim. The plaintiffs point to allegedly offensive comments made by members of the Basalt Planning and Zoning Commission as evidence that the County's decision was based on religious animus. Those statements cannot be attributed to the Pitkin County defendants because there is no evidence that the Pitkin County defendants were aware of those remarks.

The plaintiffs also cite statements and questions of Pitkin County Commissioners at the hearings on March 23, 2005 and May 11, 2005, as evidence of the Commissioners' hostility toward religious use. The plaintiffs characterize statements of Commissioner Clapper regarding the availability of the Eagle County Community Center as insinuations that the Church did not

need its own place of worship.  The plaintiffs assert that Commissioner Ireland showed hostility to a religious institution's growth objective by expressing concern that approval of the Church's present application would set a precedent for future applications for expansion.  The plaintiffs argue that Commissioners Hatfield and Ireland showed hostility by asking whether the Church's future plans included a school.  The plaintiffs contend that Commissioner Hatfield showed disregard of the religious needs of a church by expressing his view that other sites were available for religious use.

Contrary to the plaintiffs' arguments, reasonable jurors could not find the Commissioners' statements and questions at the hearings to be evidence of hostility toward religious use.  The Commissioners were obligated to consider the Church's proposal in relation to the Down Valley Comprehensive Plan, which articulates the goal of preserving the rural character and visual quality of the Emma area.  Improper motive is not shown by questions about the scope of the Church's intended use or observations about the potential ramifications of approval.  The complete hearing transcripts do not support the plaintiffs' characterization of the Commissioners' inquiries and remarks.  Nor can any inference of discriminatory motive be drawn from isolated statements in the Memorandum dated March 23, 2005, prepared by the County's land use staff.

The plaintiffs also submitted evidence of comments made by Commissioners during discussion of amendments to the Land Use Code in 2006, and comments made by Commissioners in 2008 in connection with the settlement agreement.  Those comments, made after this action was filed, are not relevant to the determination of whether the BOCC's denial of the Church's application in May 2005 was motivated by religious animus.  Similarly, Terry

Maner's deposition testimony regarding the County attorney's purported instructions in 2006 that staff at the County Clerk and Recorder's office should not assist him with research does not show that the BOCC acted with an improper motive in May 2005.

The County's tolerance of commercial vehicle storage on the Schwaller and Larson properties and the junkyard on the Woolley property, and the County's own refueling station do not show that the County's reasons for the denial were pretexts for religious discrimination. The non-conforming uses of the Schwaller, Larson and Woolley properties pre-dated the DVCP. The County's refueling station was located on the Property when it was being used as a sheep ranch and is not inconsistent with the rural character of the Emma area.

The plaintiffs' fifth claim alleges that Pitkin County's denial of the Church's special review application violated RLUIPA's "unreasonable limitations provision," 42 U.S.C. § 2000cc(b)(3)(B), which prohibits a government from imposing or implementing a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."

To prove this claim, the plaintiffs must show that Pitkin County's land use regulations, as applied or implemented, have the effect of depriving Grace Church and other religious institutions or assemblies of reasonable opportunities to practice their religion, including the use of structures, within the County. *See Rocky Mountain Christian Church*, 2010 WL 2802757 at *5.

This claim fails for lack of evidentiary support. No inferences can be drawn from the fact that no religious institution, other than Grace Church, has applied for a special review use permit to build a new worship facility in the past twenty years. To show the unavailability of other

-14-

properties, the plaintiffs submitted representations made by Terry Maner and Wayne Starr to the BOCC, stating that they reviewed all potential building sites in the County and found them to be unaffordable, inadequate for the Church's desired use, or unavailable. It is undisputed that Pitkin County, as a resort community, has some of the highest priced land in the State of Colorado. It is apparent from the evidence presented that the primary impediment to new church development in Pitkin County is the high cost of real estate. That factor is beyond the County's control.

The plaintiffs' sixth claim alleges that Pitkin County's denial of the Church's special review use application violated the plaintiffs' right of free exercise of religion guaranteed by the First Amendment to the United States Constitution. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989).

There is no triable issue of fact as to whether the County's denial of the plaintiffs' special review use application imposed more than an incidental burden on the plaintiffs' free exercise of religion. There is no evidence that Pitkin County enacted the Code or the DVCP for the purpose of restricting or suppressing religious conduct. Pitkin County's land use regulations are neutral and generally applicable. The use of land for religious purposes is not per se religious exercise protected by the First Amendment. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 654 (10th Cir. 2006) (concluding that City's denial of a zoning variance for Church's proposed daycare operation did not constitute more than an incidental burden on religious conduct because the plaintiff does not have a "right to build its daycare exactly where it

pleases," citing *Messiah Baptist Church v. County of Jefferson*, 859 F.2d 820, 824-25 (10th Cir.1988)).

A First Amendment violation can be established by evidence showing that a governmental entity has exercised value judgments in favor of secular motivations but not religious motivations, *see Grace United Methodist Church,* 451 F.3d at 654, but for the reasons set forth above, the plaintiffs' evidence is insufficient to show that Pitkin County applied its land use regulations in a discriminatory manner. Nor is there any evidence that the County's land use decision prevented the Church's members from worshiping, coerced them to modify their behavior or violate their religious beliefs, or restricted the content of the plaintiffs' religious practices. The County's denial of the Church's special review use application was based on criteria articulated in the Code and the Down Valley Comprehensive Plan. The special review use requirements are justified by Pitkin County's legitimate land use objective to preserve certain land for its agricultural, environmental and scenic value. The County's Master Plan makes preservation of the aesthetic quality of the Emma area a specific priority. The County's decision was not arbitrary or irrational. The Church's inability to locate on its chosen parcel of land does not violate the First Amendment Free Exercise Clause.

In the seventh claim, the plaintiffs allege that the County violated their First Amendment rights of freedom of speech. This claim also fails. The County's Land Use Code, which is a neutral and generally applicable law, imposes a lawful time, place and manner restriction on religious assemblies by allowing them in most zoning districts as a special review use. The denial of the Church's proposal to build a worship facility at a particular location did not improperly regulate the Church's dissemination of its religious message throughout Pitkin

County. The plaintiffs have not shown that the County's decision substantially affected the ability of Church members to engage in religious speech and expression.

The plaintiffs argue that a free speech violation is shown when the governmental authority has unbridled discretion to restrict use, citing adult use cases. The argument is not persuasive because the BOCC was limited by the special use criteria.

The plaintiffs' seventh claim also alleges that Pitkin County violated the plaintiffs' First Amendment right of freedom of assembly. The plaintiffs have not proffered any evidence showing that the County's denial of the Church's special review application substantially affected the ability of Church members to associate with one another.

The plaintiffs' eighth claim alleges that the County's denial of the Church's application constitutes an unconstitutional taking of the Church's property without due process of law. This claim is not ripe. "It is well settled that if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Bateman v. City of West Bountiful*, 89 F.3d 704, 708 (10th Cir. 1996) (internal quotations and citations omitted). The Church did not avail itself of the statutory inverse condemnation procedure provided by Colorado law, C.R.S. § 38-1-101 to 122.

The plaintiffs did not allege a substantive Due Process claim and there is no evidentiary support for such a claim.

The plaintiffs' ninth claim alleges that Pitkin County's denial of the Church's special review use application violated the plaintiffs' rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. The lack of evidentiary support

-17-

for this claim has been discussed above in connection with the RLUIPA Equal Terms claim.

The plaintiffs' tenth claim is a hybrid rights claim, alleging that the County's land use regulations abridge the plaintiffs' rights of free exercise of religion, freedom of speech, freedom of assembly and equal protection of the laws. This claim fails because the plaintiffs' evidence is insufficient to support any of their constitutional claims.

The plaintiffs' section 1983 claims and the RLUIPA claims are asserted against the Pitkin County Commissioners in their official and individual capacities. There is no basis for individual liability. The Pitkin County BOCC acted in a quasi-judicial capacity when it denied the Church's special review application. *See Colo. State Bd. of Land Comm'rs v. Colo. Mined Land Reclamation Bd.*, 809 P.2d 974, 982 (Colo. 1991) (board of county commissioners' decision to deny an application for a special use permit is a quasi-judicial action under Colo.R.Civ.P. 106(a)(4)). The individual board members are thus immune from claims for damages based on that decision. *See B Street Commons, Inc. v. Board of County Comm'rs*, 835 F.Supp. 1266 (D. Colo. 1993) (county commissioners were entitled to absolute quasi-judicial immunity is suit arising out of denial of permit to operate nude dancing facility). To the extent that the plaintiffs seek to impose individual liability on any of County Commissioners for their participation in enacting the Land Use Code, such conduct is protected by legislative immunity. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391(1979); *see also B Street Commons, Inc.*, 835 F.Supp. at 1270 (county commissioners entitled to absolute immunity from liability for damages for enacting legislation determined by the court to be unconstitutional). Contrary to the plaintiffs' argument, RLUIPA did not abrogate these principles of immunity.

Plaintiffs Terry Maner and E. Wayne Starr have not identified or quantified any monetary damages suffered by them and have no claims separate from those asserted by the Church.

Based on the foregoing, it is

ORDERED that Defendant Planning and Zoning Commission of the Town of Basalt's renewed motion pursuant to Fed.R.Civ.P. 56 for summary judgment is granted, and it is

FURTHER ORDERED that Pitkin County's combined motion for summary judgment under Fed.R.Civ.P. 56 and motion to dismiss, in part, for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is granted, and it is

FURTHER ORDERED that judgment shall enter for the defendants dismissing this civil action but without the award of costs.

Dated: September 20, 2010

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge